**Estelle DAVIS, Appellant,**

v.

**RENTAL ASSOCIATES, INC., t/a Federal Finance Realty, Appellee.**

**No. 80–180.**

District of Columbia Court of Appeals.

Argued Jan. 8, 1981.

Decided May 21, 1981.

---

John E. Scheuermann, Supervising Atty., Washington, D.C., D.C. Law Students in Court, with whom William F. Shore III, Washington, D.C. (LS # 2281), and Ann Marie Hay, Washington, D.C. (LS # 252122), were on the briefs, for appellant.

Kenneth J. Loewinger, Washington, D.C., with whom Lisa J. Dessel, Washington, D.C. (LS # 289934), was on the brief, for appellee.

Before KELLY, KERN and MACK, Associate Judges.

KELLY, Associate Judge:

This is an appeal from the denial of a motion to vacate an order entering judg-ment for appellee (landlord) and striking pleadings filed by appellant (tenant). Because we hold the court below abused its discretion by denying the motion, we reverse and remand for a trial on the merits.

I

Appellee instituted an action for possession on the ground of non-payment of rent in September 1979. Following service of a summons and complaint on appellant, both parties appeared on September 19, 1979, in the Landlord & Tenant Branch of the Superior Court. At that time, counsel was appointed to represent appellant. Also on September 19, 1979, appellee's oral motion for a protective order in the amount of the monthly rent was granted without objection.[1] According to the terms of the protective order, appellant was to pay into the court registry $176 on the 24th of September, and again on the 24th day of each month thereafter while the suit was pending.

On October 3, 1979, appellant's motion to proceed in forma pauperis was granted and appellant filed an answer, recoupment and jury demand, asserting that violations of housing regulations which existed from the time the tenancy began rendered the premises "unsafe or unsanitary," thereby breaching the landlord's warranty of habitability. In addition to seeking recoupment of the money claimed by the landlord, appellant counterclaimed for $2,552 in back rent paid, or alternatively, for $1,709.84 as damages for the landlord's breach of the warranty of habitability.

Although payment was several days late, appellant did deposit her rent into the court registry for September and October. Appellant did not make the required payments for November, December and January.

A trial had been scheduled for February 21, 1980. However at a hearing on February 12, 1980, on appellee's motion the court

---

1. Appellant does not challenge the court's authority to issue a protective order to preserve the landlord's rights. Indeed, such a challenge could not succeed since it is settled that a court may condition a defendant's ability to proceed in a suit for possession for non-payment of rent upon payment of rent that accrues while the suit is pending. *Bell v. Tsintolas Realty Co.*, 139 U.S.App.D.C. 101, 430 F.2d 474 (1970).

awarded appellee judgment for possession and struck appellant's pleadings for failure to comply with the protective order. Appellant's counsel was not present at that hearing. Appellee claims notice was sent by mail to the office of appellant's counsel on February 5, 1980, but there was no record that it was received. Counsel for appellant, upon becoming aware of the judgment entered on February 12, promptly appeared in court on February 13, and obtained a stay in the execution of the judgment until February 20, 1980.

At a hearing on February 20, 1980, appellant moved to vacate the judgment and informed the court she was ready and willing to immediately pay the entire amount in arrears and proceed to trial the next day. Appellant's proffered explanation for her past delinquency was an incapacitating injury she received on the steps of the subject premises in November 1979. No explanation was given for her failure to request permission to make late payments or to inform her own counsel that she had not made the required payments.

The court denied appellant's motion to vacate. An appeal was filed and appellant's motion to stay execution of the judgment pending appeal was denied. On or about March 27, 1980, appellant was evicted from her home.

## II

Appellant raises two issues in this appeal: (1) whether it was consistent with the requirements of due process for the court to strike appellant's pleadings for failure to comply with the protective order, and (2) whether after doing so, the court below abused its discretion by not granting appellant's motion to vacate the default judgment.

■ It is not necessary for us to explore in detail the constitutional issues raised by appellant since, assuming arguendo, there are circumstances where a court may, consistent with the requirements of due process, enter judgment against a party and dismiss a counterclaim for failure to comply with the terms of a protective order, we hold it was an abuse of discretion in this case to deny the motion to vacate.

■ The ruling on a motion to vacate a judgment under Super.Ct.Civ.R. 60(b) is a matter committed to the sound discretion of the trial judge. *Joseph v. Pareka*, D.C. App., 351 A.2d 204 (1976); *Citizens Building & Loan Association of Montgomery County v. Shepard*, D.C.App., 289 A.2d 620 (1972). However, where a timely motion has been made to vacate a default judgment, as was done in this case, the strong judicial policy favoring a trial on the merits will often justify reversal where even a slight abuse of discretion has occurred in refusing to set aside a judgment. *Dunn v. Profitt*, D.C. App., 408 A.2d 991, 993 (1979); *Jones v. Hunt*, D.C.App., 298 A.2d 220, 221 (1972).

Appellee points to several circumstances which assertedly favor a finding of no abuse of discretion: the failure to pay for three consecutive months, the failure to request permission to make late payment, late payment of the rent during the preceding two months, and appellant's failure to advise her attorney of her non-payment.

However, given our clear preference for disposition on the merits, those circumstances are outweighed by the fact that on the eve of the scheduled trial date, at the hearing on the motion to vacate (held only one week after entry of the default judgment at a hearing where appellant was not represented because counsel had allegedly not been notified), appellant's counsel proffered his client's willingness to pay the entire amount due in the court registry that day, and proceed to trial the following day.

## III

Appellant, arguing that entry of the judgment violated her right to due process, cites *Hovey v. Elliott*, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897), wherein it was held that in exercising its plenary power to punish for contempt, a court could not strike a party's pleadings and enter a default judgment. Appellee countered with the case of *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909),

asserting that it modified *Hovey* by distinguishing between punishment for contempt, and striking the pleadings on the theory that failure to comply with an act that is required before the litigation can go forward constitutes an admission of want of merit in the asserted defense. According to appellee, appellant's failure to deposit the required payments into the court registry has "cast doubt upon her defense."

If this reading of *Hovey* and *Hammond* is correct, and the Fifth Amendment does not prohibit a court from striking a party's pleadings because failure to comply with a Court order raises a presumption that the party lacks a good defense on the merits, then logically, once appellant appeared in court and requested permission to pay the delinquent amount, the presumption would no longer be valid.

In any event, although we do not condone appellant's failure to comply in a timely fashion with the terms of the protective order, it was an abuse to dispose of the case based on a presumption of no defense, and deny appellant the opportunity for a hearing on the merits, where the scheduled trial was only days away, and execution of judgment had been stayed.[2] Consequently, we reverse, and remand for a trial on the merits.[3]

*So ordered.*

KERN, Associate Judge, dissenting:

I am unable to agree with the majority that upon the facts of this case "it was an abuse of discretion . . . [for the trial court] to deny the motion to vacate."

The record reflects that, after the landlord filed its complaint for possession and the tenant filed her answering Counterclaim for rent paid in the past and her Claim for Recoupment of rent asserted to be then due and owing, the trial court ordered the tenant, *pendente lite*, to pay her rent each month thereafter into the Court Registry.

The record further reflects that subsequent to the entry of such protective order by the court, the tenant was late with her payments for two months and then failed altogether to make her payments for the next three months. The landlord then moved to strike her pleadings and for a judgment by default. When the tenant's counsel was called before the court to explain why this should not be done, her counsel proffered that she "has not been able to obtain a normal source of income that she had available to her" because of an injury suffered. (Record at 7.) Such an explanation was deemed unsatisfactory to explain away her flaunting the court's order—perhaps in light of her earlier statement under oath and in writing that her sole source of income was a monthly public assistance payment, which is a source of income that presumably is immune from suspension or revocation even when the recipient thereof suffers an injury.

The majority, in reversing the trial court, is impressed by the fact that at the hearing the tenant offered up for payment to the Registry three months' worth of back rental payments in order to stave off the striking of her pleadings and entry of judgment by default. I am not so persuaded given the high-volume workload of the Landlord and Tenant Branch and the consequent need to avoid protracting its summary proceedings unduly by allowing litigants to ignore with impunity court orders.

This court, by permitting the parties in this case to play fast and loose with the mandate of the trial judge, sets an undesirable precedent for the future. In this connection, I find comments in a recent opinion of Judge Schwelb of the trial court, pertinent. In *Arthur E. Morrissette Real Estate v. Audrey Hunt*, D.C.Super.Ct., 109 Wash.D. L.Rep. 901 (May 11, 1981), he states:

**2.** We note that although appellee was aware for over three months that payments under the protective order were delinquent, the motion for a default judgment was filed less than three weeks before the scheduled trial date. In these circumstances, the prejudice to appellee resulting from vacating the default judgment would have been minimal.

**3.** Appellant's right to a trial on the merits is of course conditioned upon payment of the sum outstanding on the protective order.

The issuance of a protective order requiring a tenant to pay an amount equal to the agreed upon monthly rent, or sometimes a lesser amount into the registry of the Court has become the norm rather than the exception in the Landlord and Tenant Branch. [*Id.* at 901.]

\*   \*   \*   \*   \*   \*

Although protective orders are entered in the thousands every year, there remains little in the way of reported appellate precedent to guide the trial judge with respect to the appropriate remedy, if any, where a tenant fails to make one or more of the required payments into the registry. [*Id.* at 904; footnote omitted.]

\*   \*   \*   \*   \*   \*

Proceedings in the Landlord and Tenant Branch are of a summary nature, and time is of the essence. In *Mendes v. Johnson*, D.C.App., 389 A.2d 781 (1978), our Court of Appeals held that the availability of "a summary procedure whereby a landlord could quickly reacquire possession from a defaulting tenant with the aid of judicial process" justified the abrogation of the common law right of self-help and the rejection of precedents holding that such right had been preserved. [*Id.* at 906, *quoting Mendes v. Johnson, supra* at 783.]

Our insistence in this and all other landlord-tenant proceedings that the trial court's orders be obeyed would surely not impinge upon due process. The Supreme Court has recognized the unique character of landlord-tenant proceedings and the concomitant need for the fashioning of a mechanism such as the protective order to serve the public interest. Thus, the Court said:

There are unique factual and legal characteristics of the landlord-tenant relationship that justify special statutory treatment inapplicable to other litigants. The tenant is, by definition, in possession of the property of the landlord; unless a judicially supervised mechanism is provided for what would otherwise be swift repossession by the landlord himself, the tenant would be able to deny the landlord the rights of income incident to owner-ship by refusing to pay rent and by preventing sale or rental or someone else. . . . Speedy adjudication is desirable to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment and dispossession. [*Lindsey v. Normet*, 405 U.S. 56, 72–73, 92 S.Ct. 862, 873–874, 31 L.Ed.2d 36 (1972).]

I suggest that when a party ignores for at least three months, and arguably five months, the trial court's protective order in a landlord-tenant possessory action we do a grave disservice to the parties, the trial judges, and the many other litigants awaiting their day in this unique court by allowing a party to start over again. This particular court's ability to render justice to all litigants in the future with the appropriate action is undermined by what we have done today.

I respectfully dissent.