UNIVERSAL TELESERVICES ARI-
ZONA, LLC, a Florida Limited Liabil-
ity Company, the Development Center,
LLC, a Florida Limited Liability
Company and Joanne Russell

v.

ZURICH AMERICAN INSURANCE
COMPANY, a New York Corporation,
and Collegeville Financial Group,
LLC, a Pennsylvania Limited Liabili-
ty Company

Appeal of Universal Teleservices Ari-
zona, LLC, the Development Cen-
ter, LLC and Joanne Russell.

Superior Court of Pennsylvania.

Argued March 1, 2005.

Filed June 27, 2005.

Peter Konolige, Indiana, PA, for appellants.

David M. Gische and Benjamin C. Eggert, Washington, DC, for Zurich, appellee.

Before: KLEIN, PANELLA and MONTEMURO *, JJ.

KLEIN, J.:

¶ 1 Plaintiff–Appellants Universal Teleservices Arizona, LLC (UTA), the Development Center, LLC (TDC) and Joanne Russell (collectively, "Plaintiffs") appeal from a decision of the distinguished Philadelphia trial judge Gene D. Cohen [1] granting summary judgment in favor of Defendant–Appellee Zurich American Insurance Company (Zurich) and denying Plaintiffs' summary judgment motion against Zurich. We affirm.

¶ 2 Basically, Plaintiffs are seeking insurance coverage from a Directors & Officers (D & O) policy purchased from Zurich in November 2001 for a $21 million judgment entered against Douglass R. Colkitt in July 2000. Colkitt is the husband of Joanne Russell and was a board member and/or officer of UTA and TDC. Another firm, GFL Advantage Fund, Ltd. (GFL), alleged Colkitt "borrowed" $13 million dollars from GFL and never repaid it. The $21 million judgment represents the $13 million "borrowed" and interest. Believing Colkitt and Russell used the $13 million to fund and/or buy UTA and TDC, GFL brought suit in Florida against those companies and Russell, in an attempt to enforce the 2000 judgment. This Florida lawsuit was filed in March, 2001.

¶ 3 In November 2001, the Zurich D & O policy was obtained, with a policy term of November 27, 2001 to November 27, 2002. This policy contained an exclusion for any litigation pending or prior to September 28, 2000. "Litigation," for the purposes of the exclusion, includes any claim "based upon, arising out of, attributable to, or in any way directly or indirectly related to" [2] any demand, suit, order, decree or judgment.

¶ 4 In November 2002, Plaintiffs filed this declaratory judgment action, seeking representation and indemnification for the Florida suit. Essentially, if we understand the time line and the record correctly, Plaintiffs have hit upon the novel theory of one person borrowing money, not repaying it, losing judgment at trial regarding the borrowed money, transferring the borrowed assets into joint assets (including new corporate entities), stonewalling on satisfying the judgment, waiting for a lawsuit to be filed seeking to enforce the judgment, and then buying insurance after the enforcement action has been filed in an attempt to avoid any personal or corporate

---

* Retired Justice assigned to the Superior Court.

1. Since retired.

2. Zurich Policy at IV.A.2.

responsibility in satisfying the judgment. Plaintiffs claim, in part, that they have a reasonable expectation of coverage. Plaintiffs are apparently using a definition of "reasonable" of which we are unaware.

■ ¶ 5 The sole question raised before us is:

Whether the prior or pending litigation exclusion of an officers and directors liability insurance applied given that the prior litigation was against a person who was not a party to this lawsuit and who was not sued in his capacity as an officer or director?

■ ¶ 6 Our scope of review of an order granting summary judgment is plenary. *Minnesota Fire and Cas. Co. v. Greenfield,* 579 Pa. 333, 855 A.2d 854, 860 (2004). Our standard of review regarding the disposition of a declaratory judgment action is whether the trial court clearly abused its discretion or committed an error of law. *State Automobile Mut. Ins. Co. v. Christie,* 802 A.2d 625, 628 (Pa.Super.2002). Further, we may not substitute our judgment for that of the trial court's if the trial court's determination is supported by the evidence. *Id.*

¶ 7 In general terms, Plaintiffs claim the application of the prior or pending exclusion in this matter defeats the reasonable expectation of coverage possessed by Russell and the corporate entities. As the reasonable expectation of the insured is the touchstone of an inquiry into insurance coverage, *Dibble v. Security of America Life Ins. Co.,* 404 Pa.Super. 205, 590 A.2d 352, 354 (1991), Plaintiffs argue they are entitled to coverage under the policy.

¶ 8 Specifically, Plaintiffs argue the exclusion does not apply for two reasons. First, the exception to the exclusion prevents any fact pertaining to or knowledge possessed by Dr. Colkitt from being ap-

plied to Russell. Second, Plaintiffs claim the initial suit against Colkitt, the genesis of all other actions, was not filed against Colkitt in his capacity as a director or officer of the insured corporate entities. Therefore, the exclusion cannot apply.

¶ 9 Both arguments fail. The exclusion at issue in this appeal reads:

A. The Underwriter shall not be liable for Loss on account of any Claim made against any Insureds:

2. based upon, arising out of, attributable to, or in any way directly or indirectly related to any demand, suit or proceeding pending or order, decree or judgment entered against Company or any Insured Person on or prior to the respective Pending or Prior Date[3] set forth in Item of the Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein.

Zurich Policy at IV.A.2.

¶ 10 Plaintiffs rely on *Lewis v. Executive Risk Indemnity Inc.,* 2001 U.S. Dist. Lexis 25293 (D.Mass.2001) (Memorandum Decision), for the proposition that no fact pertaining to Colkitt can be applied to Russell. This argument fails for a number of reasons. *Lewis* is a decision issued by the United States District Court in Massachusetts. We are not bound by that decision because it was issued by a federal court and the issue before is not one of federal law; *Lewis* specifically interprets the "wrongful acts" provision of a prior or pending litigation exclusion, not the exclusion itself. For *Lewis* to have any relevance to this case, we would have to be examining whether any "wrongful acts" committed by Colkitt were being imputed to Russell. That is not the issue presented here.

---

**3.** The "Pending or Prior Date" was September 28, 2000.

¶ 11 Without ever explaining exactly what "facts" are being lifted from Colkitt and are being applied to Russell, the argument is vague, at best. The "fact" appears to be the reality of a prior judgment. Thus, the argument would appear to be that Zurich cannot apply the prior or pending litigation exclusion to Russell, because the fact of prior litigation, the very subject of the exclusion, cannot be applied from one insured person to another. We would say this is pure sophistry, but there is nothing subtle about it. The logic behind the argument is blatantly tortured.

¶ 12 Under Plaintiffs' logical construct, the only time a prior or pending litigation exclusion could be applied would be a situation where, for example, CEO of Company A was sued and a judgment was entered against him. The CEO then buys D & O coverage and applies for indemnification for the judgment. While this example is certainly an application of the prior or pending exclusion, it is not the only application. This interpretation ignores the clear and unambiguous language of the Zurich policy.

¶ 13 The application of the exception to the exclusion is not difficult to fathom. The language is straightforward.

> No fact pertaining to or knowledge possessed by any Insured Person shall be imputed to any other Insured Person for purposes of applying the exclusions set forth in this section IV.

¶ 14 Let us suppose that a CEO is aware of a conflict of interest regarding a decision to be made by a company. The decision is made, without revealing the conflict of interest, and a lawsuit filed as a result. The exception to the exclusion means that knowledge of the conflict of interest cannot be imputed to any other board member or officer of the company simply because it is shown that the CEO was aware of it. It does not mean that what is public knowledge, the fact that a lawsuit has been filed or a judgment entered, must somehow be ignored like the proverbial elephant in the room.

¶ 15 Rather than accept Plaintiffs' interpretation of the exclusion and exception, we believe that a straightforward reading of the clause provides the answer. The language of the exclusion is clear and unambiguous. The policy provides no coverage for a loss on account of any claim made arising out of, attributable to, or in any way directly or indirectly related to any demand, suit or proceeding pending, or order, decree or judgment entered against the Company or Insured Person on or prior to September 28, 2000, or the same or substantially same fact, circumstance or situation underlying or alleged therein.

¶ 16 The judgment in question was entered against Colkitt in July, 2000. This date clearly precedes the September date of the policy. Colkitt is indisputably an insured under the Zurich policy. No matter how the plaintiffs try to torture the language of the policy, the plain language of the exclusion and the common sense interpretation of the exclusion make it applicable to the facts at hand.

¶ 17 The Plaintiffs next argue that because the original judgment was not entered against Colkitt in his capacity as an officer of UTA or TDC, the exclusion cannot apply. There is nothing in the language of the exclusion to indicate that it applies only when the prior or pending action involves the insured in his or her capacity in the current employ. The interpretation proposed by Plaintiffs makes no sense.

¶ 18 Under Plaintiffs scheme our hypothetical CEO has made his decision without revealing the conflict of interest and has been sued. He resigns from Company

A and forms Company B. The lawsuit is filed against the CEO. There is no reason why the insurer of Company B should be forced to defend and/or indemnify the CEO for his actions at Company A. Yet, because CEO was not sued in his capacity as CEO of Company B, Plaintiffs' proposal would yield this result. We will not support an interpretation of an insurance policy that produces such an absurd result.

¶ 19 As we have already stated, the proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured. In determining the reasonable expectation of the insured, courts must examine the totality of the insurance transaction involved. *Kvaerner Metals Div. v. Commercial Union Ins. Co.*, 825 A.2d 641, 644 (Pa.Super.2003). However, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous. *Id.*

¶ 20 The trial court determined, and our review has demonstrated, that the relevant language of the Zurich policy is clear and unambiguous. Only the most agonized reading of the policy could produce the plaintiffs' desired result. The trial court determined, and we agree, the Florida lawsuit that was filed in an attempt to enforce the $21,000,000 judgment falls within the "pending or prior" exclusion. As such, the trial court committed no abuse of discretion or error of law. *State Automobile, supra.*

¶ 21 Affirmed.